No. 26-___

# United States Court of Appeals
# for the Federal Circuit

*IN RE GOOGLE LLC*

*Petitioner*

**On Petition for a Writ of Mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Case Nos. IPR2025-00487 and IPR2025-00488**

Nathan R. Speed
Elisabeth H. Hunt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA  02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** _____

**Short Case Caption** _In re Google LLC_____

**Filing Party/Entity** Google LLC_____

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: __November 19, 2025__

Signature: _/s/Nathan R. Speed_

Name: Nathan R. Speed

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☒None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐None/Not Applicable |
| Google LLC | | XXVI Holdings Inc. |
| | | Alphabet Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable                    ☐    Additional pages attached

| | | |
|---|---|---|
| Wolf, Greenfield & Sacks, P.C. | | |
| Gregory S. Nieberg | | |
| Anant K. Saraswat | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒   Yes (file separate notice; see below)        ☐   No        ☐   N/A

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒    None/Not Applicable                    ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

.

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES.................................................................1

RELIEF SOUGHT.........................................................................................2

INTRODUCTION ..........................................................................................3

STATEMENT OF THE ISSUES.....................................................................6

BACKGROUND ...........................................................................................7

    A.   Congress barred review of the Director's institution decision in only limited circumstances.................................................................7

    B.   Congress made an express choice regarding when in their term patents can be challenged via IPR.........................................................9

    C.   In *Celgene*, this Court held that patentees—for more than forty years—have had the "expectation" that their patents are subject to reconsideration by the USPTO.................................................10

    D.   Previously, the USPTO routinely determined whether to institute IPR without considering the challenged patent's age. ............................12

    E.   Google filed its petitions for IPR, relying on then-existing guidance from the USPTO. ....................................................................14

    F.   After Google filed its petitions, the USPTO issued new guidance that imposed a new, age-based limit on what patents are subject to IPR and created a new, non-statutory process for evaluating petitions. ............................................................................................14

    G.   The former Acting Director discretionarily denied Google access to IPR because VirtaMove's patent was more than 14 years old. ...........18

LEGAL STANDARD....................................................................................19

REASONS WHY MANDAMUS IS WARRANTED.........................................19

I.    Section 314(d) does not bar Google's requested relief....................................20

    A.   Neither section 314(d) nor *Mylan* applies to the former Acting Director's discretionary-denial decision made under the new bifurcated process.................................................................................20

    B.   The former Acting Director's decision in this case is the type of agency "shenanigan" that the Supreme Court has said is subject to judicial review, and *Mylan* is not to the contrary.....................................24

C.   *Mylan* confirms that mandamus is the proper vehicle for addressing Google's constitutional claim. ...............................................26

II.   Google's right to relief is clear and indisputable. ...........................................26

   A.   The "settled expectations" rule is not in accordance with the law...........26

   B.   The "settled expectations" rule exceeds the USPTO's authority, and violates separation-of-powers principles..........................................28

      1.   The AIA does not authorize the USPTO to impose institution criteria that lack any basis in the statute. ..........................................29

      2.   The USPTO lacks authority to impose an age-based limit after which patents are not subject to IPRs................................................31

   C.   The "settled expectations" rule is arbitrary and capricious......................35

III.   Google has no other adequate means to obtain relief. .....................................36

IV.   Mandamus relief is appropriate under the circumstances.................................36

CONCLUSION.................................................................................................................37

CERTIFICATE OF COMPLIANCE...................................................................................38

# TABLE OF AUTHORITIES

**CASES**

*Amgen v. Bristol Myers Squibb*,
  IPR2025-00602, 2025 WL 2086050 (P.T.A.B. July 24, 2025) ..........................16

*Apple, Inc. v. Gesture Tech. Partners, LLC*,
  IPR2021-00920, 2022 WL 17364390 (P.T.A.B. Nov. 30, 2022) .......................13

*Apple, Inc. v. Gesture Tech. Partners, LLC,*
  27 F.4th 364 (Fed. Cir. 2025) .....................................................................13

*Celgene Corp. v. Peter*,
  141 S. Ct. 132 (2020) ..................................................................................11

*Celgene Corp. v. Peter*,
  931 F.3d 1342 (Fed. Cir. 2019) ............................................................ passim

*Cook v. Principi*,
  318 F.3d 1334 (Fed. Cir. 2002) (en banc) ...............................................32

*Cuozzo Speed Techs., LLC v. Lee*,
  579 U.S. 261 (2016) ........................................................................... passim

*Dabico Airports Sols., Inc. v. AXA Power APS*,
  IPR2025-00407, 2025 WL 1710857 (P.T.A.B. June 18, 2025).................... 15, 18

*FDA v. Brown & Williamson*,
  529 U.S. 120 (2000) ....................................................................................37

*Garmin Int'l., Inc. v. Cuozzo Speed Techs. LLC*,
  IPR2012-00001, 2013 WL 5947691 (P.T.A.B. January 9, 2013)......................12

*In re Google LLC*,
  No. 2025-144, 2025 WL 3096849 (Fed. Cir. Nov. 6, 2025).............................23

*Heckler v. Chaney*,
  470 U.S. 821 (1975) ....................................................................................22

*IGT v. Zynga Inc.*,
  144 F.4th 1357 (Fed. Cir. 2025).................................................................25

*Mach Mining, LLC v. EEOC,*
   575 U.S. 480 (2015) ...................................................................................22

*Mobility Workx, LLC v. Unified Patents, LLC,*
   15 F.4th 1146 (Fed. Cir. 2021) .................................................................11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ...................................................................................35

*In re Motorola Sols., Inc.,*
   No. 2025-134, 2025 WL 3096514 (Fed. Cir. Nov. 6, 2025)..........................23

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.,*
   989 F.3d 1375 (Fed. Cir. 2021) ................................................... passim

*Nat'l Fed'n of Indep. Bus v. Dep't of Lab., Occupational Safety & Health Admin.,*
   595 U.S. 109 (2022) ..................................................................................31

*NHK Spring Co. Ltd. v. Intri-Plex Techs., Inc.,*
   IPR2018-00752, 2018 WL 4373643, (P.T.A.B. Sept. 12, 2018)...... 12, 13, 15, 28

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC,*
   584 U.S. 325(2018) ................................................................... 13, 32

*In re Palo Alto Networks, Inc.,*
   44 F.4th 1369, 1374 (Fed. Cir. 2022)........................................... 26, 36

*Qualcomm Inc. v. Apple Inc.,*
   134 F.4th 1355 (Fed. Cir. 2025).................................................................8, 21

*Return Mail, Inc. v. United States Postal Service,*
   587 U.S. 618 (2019) ..................................................................................13

*Samsung Elec. Co., Ltd. v. Harbor Island Dynamic, LLC,*
   IPR2024-01403, Paper No. 9 (P.T.A.B. March 24, 2025).................................15

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,*
   948 F.3d 1342 (Fed. Cir. 2020) .................................................................33

*In re SAP Am., Inc.,*
   No. 2025-132, 2025 WL 3096788 (Fed. Cir. Nov. 6, 2025)..........................23

*SAS Institute, Inc. v. Iancu*,
  584 U.S. 357 (2018) ............................................................... 7, 13, 21, 35

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods. LLC*,
  580 U.S. 328 (2017) ...........................................................................34

*Social Security Bd. v. Nierotko*,
  327 U.S. 358 (1946) ...........................................................................30

*Thryv, Inc. v. Click-to-Call Techs.*,
  590 U.S. 45 (2020) ................................................................. 8, 13, 21, 25

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021) ...............................................................................7

*Viant Tech. LLC v. Intent IQ, LLC*,
  IPR2025-00128, Paper No. 10 (P.T.A.B. March 25, 2025)................................15

*WebGroup Czech Republic, A.S. v. Dish Techs. LLC*,
  IPR2025-00467, 2025 WL 1953486 (P.T.A.B. July 16, 2025) ..........................16

*Webster v. Doe*,
  486 U.S. 592 (1988) ...........................................................................24

*Woodward v. United States*,
  871 F.2d 1068 (Fed. Cir. 1989)...............................................................24

**STATUTES**

35 U.S.C. § 311 ....................................................................................9

35 U.S.C. § 311(a) ...............................................................................33

35 U.S.C. § 311(c) ................................................................. 9, 29, 32, 33

35 U.S.C. § 312 ................................................................................5, 17

35 U.S.C. § 312(a) ...............................................................................29

35 U.S.C. § 312(a)(3)............................................................................31

35 U.S.C. § 314(a) .............................................................................7, 29

35 U.S.C. § 314(b) ................................................................................7

35 U.S.C. § 314(d) ..........................................................................6, 7

35 U.S.C. § 315(a) ............................................................................29

35 U.S.C. § 315(a)(1) .........................................................................9

35 U.S.C. § 315(b) ..................................................................... passim

35 U.S.C. § 316(a)(2).........................................................................29

35 U.S.C. § 321(c) ...........................................................................9, 33

35 U.S.C. § 325(d) .............................................................................31

5 U.S.C. § 701(a)(2)...........................................................................22

5 U.S.C. § 706(2) .................................................................................5

5 U.S.C. § 706(2)(A)..................................................................... 26, 35

5 U.S.C. § 706(2)(A)-(D).....................................................................19

5 U.S.C. § 706(2)(C).................................................................... 28, 34

## REGULATIONS

37 C.F.R. § 42.3(b) ...........................................................................9, 35

37 C.F.R. § 42.4 .................................................................................17

## OTHER LEGISLATIVE AUTHORITIES

America Invents Act,
   H.R. Rep. No. 112-98 (2011) ................................................. 7, 9, 36

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies
   Appropriations Act,
   Pub. L. No. 106-113, § 4608, 113 Stat. (2000) ..................................32

The Patent Reform Act of 2007,
   S. Rep. No. 110-259, at 21 (2008)......................................................31

**STATEMENT OF RELATED CASES**

The following pending cases in which one or more claims of U.S. Patent No. 7,519,814 ("the '814 patent") have been asserted may directly affect or be directly affected by this Court's decision in this appeal:

1. *VirtaMove, Corp. v. International Business Machines Corp.*, 2-25-cv-00619 (E.D. Tex.);

2. *VirtaMove, Corp. v. Google LLC,* 5-25-cv-00860 (N.D. Cal.)[1];

3. *VirtaMove, Corp. v. Microsoft Corp.,* 7-24-cv-00338 (W.D. Tex.);

4. *VirtaMove, Corp. v. Oracle Corp.,* 7-24-cv-00339 (W.D. Tex.);

5. *Red Hat, Inc. v. VirtaMove, Corp.*, 5-24-cv-04740 (N.D. Cal.);

6. *VirtaMove, Corp. v. Hewlett Packard Enterprise Co.,* 2-24-cv-00093 (E.D. Tex.);

7. *VirtaMove, Corp. v. International Business Machines Corp.,* 2-24-cv-00064 (E.D. Tex.);

8. *VirtaMove, Corp. v. Amazon.com, Inc.,* 7-24-cv-00030 (W.D. Tex.).

---

[1] Originally filed as *VirtaMove, Corp. v. Google LLC*, 7-24-cv-00033 (W.D. Tex.).

**RELIEF SOUGHT**

Petitioner Google LLC ("Google") requests a writ of mandamus vacating discretionary-denial decisions issued by the U.S. Patent and Trademark Office ("USPTO") in IPR2025-00487 and IPR2025-00488.[2]  The Court should direct the USPTO to reconsider whether institution of *inter partes* review ("IPR") is warranted under 35 U.S.C. § 314(a), and instruct the agency that it cannot consider the patent's age when assessing whether institution is warranted.

---

[2] The USPTO issued a single decision denying IPR in both proceedings.  Google therefore has challenged both denials in a single petition.  The same decision also denied IPR against a different VirtaMove patent.  Google has elected not to challenge that aspect of the decision because all claims of that patent have been found invalid in district court.

## INTRODUCTION

The writ of mandamus is a critical tool that Congress gave the judiciary to correct agency action that exceeds the scope of the agency's delegated authority, violates a clear statutory mandate, or runs afoul of the Constitution. Such agency shenanigans are reviewable and cannot be shielded from judicial review by an agency's claim of unlimited discretion to ignore a deliberately-crafted statutory framework and binding legal precedent. In effectively declaring as a matter of policy that "old" patents are no longer subject to IPR because the simple passage of time has purportedly given their owners "settled expectations" that the patents will not be challenged, the USPTO has engaged in the type of shenanigans for which mandamus relief is warranted.

The USPTO's new "settled expectations" rule is extraordinary in every sense.

It directly contravenes this Court's *Celgene* decision, which explicitly held that patentees have ***no expectation*** that their patents are ever immune from IPR. *Celgene Corp. v. Peter*, 931 F.3d 1342, 1362 (Fed. Cir. 2019). Indeed, the USPTO itself successfully (and repeatedly) advocated this position over the course of the *Celgene* case. The USPTO's unjustifiable about-face as to what expectations patentees can reasonably have is not in accordance with the law and must be set aside.

The rule also exceeds the USPTO's statutory authority because the only age-based restriction Congress placed on IPR limits how *early* in its term a patent may be challenged, not how *late*. Congress knew how to impose an age-based restriction, and it elected not to impose any restriction on "old" patents. And Congress did not give the USPTO unilateral discretion to impose additional institution criteria beyond those set forth in the AIA. For similar reasons, the new rule violates separation-of-power principles too.

The rule is also arbitrary and capricious as it permits the USPTO to condition agency action on a factor—the age of the challenged patent—that Congress did not intend for the agency to consider, as evidenced by Congress's deliberate choice not to limit how late in its term a patent can be challenged.

For any of these reasons, this Court should strike down the new "settled expectations" rule and order the Director of the USPTO to reconsider whether to institute IPR without regard to the challenged patent's age.

The unlawful nature of the new "settled expectations" rule is glaring and undeniable. As the USPTO has done in response to other recent mandamus petitions challenging the new rule, the agency is expected to argue primarily that the former Acting Director's application of that rule in this case to discretionarily deny IPR is immune from judicial review. This expected argument is wrong.

The Supreme Court has made clear that only ***certain*** determinations by the Director are immune from judicial review. These determinations fall into two buckets: (**1**) those that relate to the merits of an IPR petition, and (**2**) those that relate to statutes closely related to that merits-based determination, *e.g.*, 35 U.S.C. §§ 312 or 315(b). The former Acting Director's determination ***in this case*** does not fall into either bucket.

In this case (and hundreds of others), the former Acting Director employed a newly-crafted bifurcated-decisional process in which the former Acting Director would make an initial determination on whether discretionary denial is warranted and that initial determination would—by the USPTO's ***own admission***—relate to ***neither*** the merits of the IPR petition ***nor*** to statutes closely related to such merits-based determination. The USPTO deliberately crafted a new, extra-statutory procedure by which a determination on institution would be a two-step process, and the first determination in that two-step process is not one that the Supreme Court has said is immune from judicial review.

Unable to hide behind the shield of judicial review, the former Acting Director's determination in this case is no different than any other agency action and is subject to judicial review under the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2). Under traditional APA principles, the former Acting Director's decision is unlawful and must be set aside.

# STATEMENT OF THE ISSUES

1.     Is the USPTO's decision to deny Google's petitions immune from judicial review where the decision—by the agency's own admission—is not within the scope of 35 U.S.C. § 314(d) as interpreted by the Supreme Court?

2.     Was the USPTO's decision to deny Google's petitions not in accordance with the law where the agency's new "settled expectations" rule is contrary to this Court's *Celgene* decision?

3.     Did the USPTO exceed its statutory authority—violating the APA and the Constitution's separation of powers—by imposing an age-based limit on whether a patent is subject to IPR that is contrary to the statute?

4.     Is the agency's "settled expectations" rule arbitrary and capricious where the rule relies on a factor—the challenged patent's age—that Congress did not intend for the agency to consider?

**BACKGROUND**

**A.    Congress barred review of the Director's institution decision in only limited circumstances.**

Congress enacted the America Invents Act ("AIA") to "improve patent quality and limit unnecessary and counterproductive litigation costs."  H.R. Rep. No. 112-98, at 40 (2011).  Among its provisions, the AIA created IPR proceedings to provide opportunities for the USPTO to "take a second look at patents previously issued by the [agency]."  *United States v. Arthrex, Inc.*, 594 U.S. 1, 8 (2021).

The AIA provides that the Director of the USPTO decides whether to institute IPR.  35 U.S.C. § 314(b).  The statute explains that "[t]he Director may not authorize an [IPR] to be instituted unless the Director determines that the information presented in [a] petition…shows that there is a reasonable likelihood that the petitioner would prevail" in demonstrating at least one claim to be unpatentable. 35 U.S.C. § 314(a).

The AIA also provides that "[t]he determination by the Director whether to institute an [IPR]…shall be final and nonappealable."  35 U.S.C. § 314(d).  The Supreme Court has explained that section 314(d) bars judicial review of the Director's merits-based determination under section 314(a) that "the information presented in the petition" demonstrates a reasonable likelihood that a challenged claim is unpatentable.  *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016); *SAS Institute, Inc. v. Iancu*, 584 U.S. 357, 370-71 (2018).

*Cuozzo* and subsequent cases have also explained that section 314(d) extends beyond merits-based challenges and bars non-merits-based challenges that "consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate [IPR]." *Id.* at 274-76 (reviewing 35 U.S.C. § 312's particularity requirement); *see also Thryv, Inc. v. Click-to-Call Techs.*, 590 U.S. 45, 59 n.8 (2020) (re-affirming *Cuozzo* and reviewing 35 U.S.C. § 315(b)'s time bar).

Section 314(d) thus bars judicial review in "limited circumstances," and those circumstances relate to either the petition's merits or "to straightforward procedural rules closely tied to [the] IPR institution decision." *Qualcomm Inc. v. Apple Inc.*, 134 F.4th 1355, 1362-63 (Fed. Cir. 2025) (quotation omitted). *See also Cuozzo*, 579 U.S. at 271-72 (section 314(d) avoids the inefficiencies of unnecessary oversight that would manifest if every "ordinary dispute" was subject to review).

Other circumstances—such as whether the agency "act[s] outside its statutory limits" or otherwise engages in "shenanigans"—remain subject to judicial review despite section 314(d). *Cuozzo*, 579 U.S. at 275. Likewise, section 314(d) does not insulate from judicial review those institution decisions that are related neither to a petition's merits nor to statutes closely related to that merits-based decision. *Qualcomm*, 134 F.4th at 1363 ("[W]e have heard IPR appeals…where challenged issues were related, but not closely, to institution decision.") (quotation omitted).

**B.** **Congress made an express choice regarding when in their term patents can be challenged via IPR.**

To address its concern that "questionable patents" were "too difficult to challenge," H.R. Rep. No. 112-98, at 39-40, Congress provided that any person other than the patent owner has the right to file an IPR petition. 35 U.S.C. § 311. In doing so, Congress imposed only one age-based limit on when in its term a patent can be challenged via IPR. Specifically, Congress enacted 35 U.S.C. § 311(c), which states:

> **Filing Deadline**. A petition for inter partes review shall be filed after the later of either:
>
> (1)    the date that is 9 months after the grant of a patent; or
>
> (2)    if a post-grant review is instituted under chapter 32, the date of the termination of such post-grant review.

Congress thus limited the class of patents subject to IPR to those patents that have been issued for at least nine months. For younger patents, Congress provided a different mechanism for review, namely post-grant review. 35 U.S.C. § 321(c). And although Congress imposed other *time*-related limitations on when IPR may be instituted—*e.g.*, 35 U.S.C §§ 315(a)(1), (b)—it imposed no other *age*-based limitation beyond section 311(c). *See also* 37 C.F.R. § 42.3(b) ("A petition…must be filed with the Board consistent with any time period required by statute.").

**C.    In *Celgene*, this Court held that patentees—for more than forty years—have had the "expectation" that their patents are subject to reconsideration by the USPTO.**

Soon after the AIA passed, some patentees challenged its constitutionality. One such patentee was Celgene Corporation. After two of Celgene's patents were found unpatentable at the conclusion of separate IPR trials, Celgene appealed to this Court. *Celgene Corp. v. Peter*, 931 F.3d 1342 (Fed. Cir. 2019). The two Celgene patents had issued, respectively, 14 and 15 years prior to being challenged, and a full decade before the AIA was passed. *Id.* at 1347, 1359 (discussing institution decisions in 2015, and identifying 2000 and 2001 issue dates). Celgene argued that subjecting its pre-AIA patents to post-AIA IPR "unfairly interferes with its reasonable investment-backed expectations without just compensation," and was therefore an unconstitutional taking. *Id.* at 1358.

The USPTO intervened and argued that no taking had occurred because "patents have been subject to reconsideration and cancellation by the USPTO in administrative proceedings for nearly four decades, and Celgene's own patent[s were] issued subject to this administrative revocation authority." Brief for Intervenor at 42-43, *Celgene*, Case No. 2018-1167, Dkt. No. 41 (Fed. Cir. Aug. 30, 2018). This Court agreed.

Echoing the USPTO's argument, this Court explained that "for the last forty years, patents have [] been subject to reconsideration and possible cancellation by the PTO" and that the then-new IPR procedures "do not differ significantly enough from preexisting PTO mechanisms for reevaluating the validity of issued patents to constitute a Fifth Amendment taking." *Id.* at 1359. Given the similarities between IPR and the reconsideration mechanisms that existed when Celgene's patents issued, Celgene obtained its patents knowing full well that the USPTO "possessed the authority to reexamine—and perhaps cancel—a patent claim it had previously allowed." *Id.* at 1359 (quoting *Cuozzo*, 579 U.S. at 267).

Celgene's knowledge that its patents were granted subject to potential reconsideration by the USPTO defeated Celgene's claim of reasonable investment-backed expectations. As this Court explained, "the expectation that patent owners have had for nearly four decades [is] that patents are open to PTO reconsideration and possible cancelation if it is determined…that the patents should not have issued." *Celgene*, 931 F.3d at 1361-62; *see also id.* at 1362-63 ("For forty years, patents owners have [] had the expectation that the PTO could reconsider the validity of issued patents…").

The Supreme Court denied Celgene's petition for a writ of certiorari. *Celgene Corp. v. Peter*, 141 S. Ct. 132 (2020). *Celgene* remains the law. *E.g.*, *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1157 (Fed. Cir. 2021).

**D. Previously, the USPTO routinely determined whether to institute IPR without considering the challenged patent's age.**

Consistent with the AIA's explicit text, the USPTO's position during the *Celgene* appeal, and this Court's ruling in *Celgene*, the USPTO has routinely considered whether to institute IPR without regard to the challenged patent's age or a patentee's alleged settled expectations that its patent would somehow be immune from challenge simply given the patent's age.

For example, the very first IPR that the Board (acting on the Director's behalf) instituted involved a patent that was more than eight years old. *Garmin Int'l., Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001, 2013 WL 5947691, *1 (P.T.A.B. January 9, 2013) (instituting IPR against patent that issued on Aug. 17, 2004). The Board's institution decision said nothing about the patent's age. *See generally id.*

In fact, in the still-binding precedential Board opinion *NHK Spring Co. Ltd. v. Intri-Plex Techs., Inc.*, IPR2018-00752, 2018 WL 4373643, (P.T.A.B. Sept. 12, 2018), the Board rejected a patent owner's argument that IPR should be discretionarily denied because the petition was filed ten years after the petitioner first became aware of the patent. As the Board explained:

> "Patent Owner argues that Petitioner knew about the '841 patent for more than 10 years, yet provides no explanation for why it waited so long to file the Petition. We are not persuaded that this lapse in time favors denying review. As Patent Owner acknowledges, Petitioner filed the Petition shortly before the one-year bar in 35 U.S.C. § 315(b) expired. The Petition, therefore, was timely…."

2018 WL 4373643 at *7 (citations omitted).

Following *NHK*, the Board consistently instituted IPR against patents that were late in their term, even instituting IPR against patents that had expired. *Apple, Inc. v. Gesture Tech. Partners, LLC*, IPR2021-00920, 2022 WL 17364390, *16 (P.T.A.B. Nov. 30, 2022) *aff'd* 27 F.4th 364 (Fed. Cir. 2025); Appx464-468 (study concluding that nearly half of all IPRs filed since 2012 involved patents more than six years old). Indeed, each patent at issue in the five IPRs that have been reviewed by the Supreme Court was late in its term when challenged[3]:

| Case | Patent | Issue Date | Institution Date | Age |
|------|--------|------------|------------------|-----|
| *Oil States* | 6,179,053 | Jan. 30, 2001 | June 10, 2014 | 13-yrs. |
| *Cuozzo* | 6,778,074 | Aug. 27, 2004 | Jan. 9, 2013 | 12-yrs. |
| *SAS* | 7,110,936 | Sept. 19, 2006 | Aug. 12, 2013 | 7-yrs. |
| *Thryv* | 5,818,836 | Oct. 6, 1998 | Oct. 30, 2013 | 15-yrs. |
| *Return Mail* | 6,826,548 | Nov. 30, 2004 | Oct. 16, 2014 | 10-yrs. |

---

[3] Google requests that the Court take judicial notice of the various dates in the chart. These facts are indisputable and are amenable to judicial notice. Fed. R. Evid. 201.

**E. Google filed its petitions for IPR, relying on then-existing guidance from the USPTO.**

On January 31, 2025, in response to VirtaMove having sued Google for alleged patent infringement, Google filed two IPR petitions against VirtaMove's '814 patent, which issued in 2009. VirtaMove has never alleged that it notified Google of the '814 patent or of Google's alleged infringement prior to filing suit.[4]

In filing its petitions against a patent that had issued roughly 15 years earlier, Google relied on the USPTO's consistent practice of instituting IPR against "old" patents. As the precedential *NHK* decision made clear, the age of VirtaMove's patent was not relevant to whether Google's petitions should be instituted, because Google satisfied the only applicable timing deadline that Congress imposed, *i.e.*, 35 U.S.C. § 315(b).

**F. After Google filed its petitions, the USPTO issued new guidance that imposed a new, age-based limit on what patents are subject to IPR and created a new, non-statutory process for evaluating petitions.**

On March 26, 2025, two months after Google filed its petitions, the USPTO issued a memorandum called "Interim Processes for PTAB Workload Management." Appx469-471 ("the Process Memo"). The Process Memo described

---

[4] In pending litigation, VirtaMove only alleges that "Google would have learned that [a VirtaMove product] was patented as a matter of basic due diligence" following alleged business meetings between the two companies. First Amended Compl. ¶ 10, *VirtaMove, Corp. v. Google LLC*, 7:24-cv-00033-DC-DTG (W.D. Tex. May 21, 2024).

a new agency-crafted procedure by which the Director would determine whether to discretionarily deny IPR.  It was in the Process Memo that the USPTO said for the first time that a factor the Director would consider when determining whether to deny institution was the "[s]ettled expectations of the parties, such as the length of time the claims have been in force."  Appx470.

As discussed *supra* pp. 12-13, prior to the Process Memo, the Board's binding *NHK* precedent had been that such expectations based on the length of time the claims had been in force were not relevant.[5]  Indeed, in the days immediately before the Process Memo published, the Board instituted IPR against patents that had issued 15 years earlier.  *See, e.g.*, *Viant Tech. LLC v. Intent IQ, LLC*, IPR2025-00128, Paper No. 10 (P.T.A.B. March 25, 2025) (instituting review against patent that issued in December 2010); *Samsung Elec. Co., Ltd. v. Harbor Island Dynamic, LLC*, IPR2024-01403, Paper No. 9 (P.T.A.B. March 24, 2025) (instituting review against patent that issued in August 2010).

Shortly after issuing the Process Memo, however, the former Acting Director began to deny IPR based on the "settled expectations" that the patentee allegedly enjoyed given the challenged patent's age.  For example, in *Dabico Airports Sols., Inc. v. AXA Power APS*, IPR2025-00407, 2025 WL 1710857, *1-2 (P.T.A.B. June 18, 2025), the former Acting Director found that despite "[s]ome facts counsel[ing]

---

[5] To this day, *NHK* remains precedential.

against discretionary denial," denial was warranted because "the challenged patent has been in force almost eight years, creating settled expectations." The former Acting Director posited that "the longer the patent has been in force, the more settled expectations should be," and that this is true regardless of whether the petitioner had "actual notice of a patent or of possible infringement." *Id.* at *1.

Following *Dabico*, the former Acting Director denied institution in numerous cases, establishing a de facto rule by which patents more than six years old are presumptively immune from IPR. *Compare Amgen v. Bristol Myers Squibb*, IPR2025-00602, 2025 WL 2086050, *2 (P.T.A.B. July 24, 2025) (settled expectations preclude institution where patent issued six years prior to the challenge) *with WebGroup Czech Republic, A.S. v. Dish Techs. LLC*, IPR2025-00467, 2025 WL 1953486, *2 (P.T.A.B. July 16, 2025) (no settled expectations where patents issued between two and six years prior to the challenge).

The Process Memo also outlined a new bifurcated process by which the Director would first decide whether to deny IPR discretionarily before the Board would ever consider the petition's merits. Under this new process, what had previously been a single decision by the Board on whether to institute IPR became a bifurcated process involving two separate decisions conducted serially. Appx469.

The first decision was one in which the Director—not the Board—considered only "discretionary considerations," not the petition's merits or its compliance with statutory provisions closely tied to section 314(a)'s merits-based determination. Appx469. By regulation, the Director had previously delegated the responsibility of deciding whether to institute IPR to the Board. 37 C.F.R. § 42.4 ("The Board institutes the trial on behalf of the Director."). In announcing the Process Memo, the USPTO did not announce any change to 37 C.F.R. § 42.4.

The second decision was one in which the Board (acting on the Director's behalf) would consider the "merits [of the petition] and other non-discretionary statutory considerations." Appx469. In a published "Frequently Asked Questions," the USPTO explained that the "other non-discretionary statutory considerations" that would be evaluated in the Board's second decision included compliance with statutory provisions closely tied to the petition like 35 U.S.C. §§ 312 or 315(b). Appx474-475.[6]

---

[6] The Director recently collapsed the Process Memo's bifurcated process into a single institution decision that he, "in consultation with at least three PTAB judges," will make. Appx492-493. Under the new procedure, the Director continues to consider the factors outlined in the Process Memo, including "settled expectations." *Id.*

**G.** **The former Acting Director discretionarily denied Google access to IPR because VirtaMove's patent was more than 14 years old.**

Despite Google's petitions having been filed before the Process Memo published, the USPTO applied its bifurcated process to the petitions. In a combined decision addressing both petitions, the former Acting Director[7] discretionarily denied Google's petitions. Appx1-4. The decision found that "[s]ome factors counsel against discretionary denial. For example, there is currently no trial date set for the parallel district court proceeding involving Petitioner and the challenged patents." Appx2. The decision nonetheless discretionarily denied Google's petition because "the challenged patent[] ha[s] been in force for more than 14 years, creating strong settled expectations." Appx2 (citing *Dabico*). Although the decision claimed to be a "holistic assessment" of the evidence (Appx2), the age of VirtaMove's patent was the only factor identified as weighing in favor of denial.

Google requested rehearing. Appx5-44. That request was denied without explanation. Appx45-47.

---

[7] Due to a conflict, former Acting Director Stewart delegated her authority to issue the discretionary-denial decisions. Appx1 n.1.

## LEGAL STANDARD

This Court has "jurisdiction to review any petition for a writ of mandamus denying institution of an IPR." *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021). A petitioner must show (1) "a clear and indisputable legal right," (2) that "it does not have any other adequate method of obtaining relief," and (3) that "the writ is appropriate under the circumstances." *Id.* at 1382.

## REASONS WHY MANDAMUS IS WARRANTED

The APA provides that this Court "shall hold unlawful and set aside" actions by the USPTO that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D). The USPTO's new "settled expectations" rule, including its application in this case, must be set aside for at least the following reasons:

*First*, the rule is not in accordance with law because it directly contravenes this Court's *Celgene* decision. That the USPTO took the position during the *Celgene* case that patentees have no expectation—settled or otherwise—that their patents would ever be free from IPR underscores the unlawfulness of the new rule.

***Second***, the rule exceeds the USPTO's statutory authority, and violates separation-of-powers principles. Congress only limited how early in its life a patent can be challenged via IPR, not how late it can be challenged. The USPTO lacks statutory or constitutional authority to impose a patent-age-based limit on IPR when Congress deliberately chose not to do so.

***Third***, the rule is arbitrary and capricious as it conditions IPR on a factor—the challenged patent's age—that Congress, as evidenced by its deliberately-crafted statutory framework, did not intend for the agency to consider when determining whether to institute IPR.

## I.     Section 314(d) does not bar Google's requested relief.

Citing *Mylan*, the USPTO has taken the position that section 314(d) bars review of the agency's new "settled expectations" rule via mandamus. Response of Respondent USPTO at 11-15, *In re SanDisk Tech.*, Case No. 25-152, Dkt. No. 39 (Fed. Cir. Oct. 16, 2025). As discussed below, however, neither section 314(d) nor *Mylan* bars the Court from considering Google's petition.

### A.     Neither section 314(d) nor *Mylan* applies to the former Acting Director's discretionary-denial decision made under the new bifurcated process.

The USPTO's newly-crafted bifurcated process has resulted in the agency making a determination that Congress never envisioned it making and which Congress thus never intended to be shielded from judicial review. Section 314(d)

bars judicial review in "limited circumstances," *Qualcomm*, 134 F.4th at 1362, and those circumstances are entirely absent here.

Section 314(d) bars judicial review of the Director's merits-based determination under section 314(a) of whether "the information presented in the petition" demonstrates a reasonable likelihood that a challenged claim is unpatentable. *Cuozzo*, 579 U.S. at 275. It also bars review of non-merits-based challenges that "consist of questions that are closely tied to the application and interpretation of statutes related to" that merits-based determination. *Id.* at 274-75. Section 314(d) thus bars challenges to the Director's initial merits determination or to determinations the Director makes based on statutes closely related to that initial determination, *e.g.*, determinations regarding the petition's compliance with section 315(b)'s time bar or section 312(a)'s particularity requirement. *See Thryv*, 590 U.S. at 59 n.8; *SAS*, 584 U.S. at 370-71.

The former Acting Director's discretionary-denial decision in this case is neither a merits-based determination under section 314(a) nor a determination regarding a statute closely related to that initial merits-based determination. The USPTO's Process Memo is **explicit** that the Director's decision under the new bifurcated process is not premised on the petition's merits or statutes closely related to the merits-based determination. Instead, only the second decision under the new bifurcated process—the one that the Director delegated to the Board and the one that

*was never reached in this case*—would have considered "merits and other non-discretionary statutory considerations." Appx469. These "non-discretionary statutory considerations," the USPTO has explicitly explained, include compliance with the particularity and time-bar statutory requirements at issue in *Cuozzo* and *Thryv*. Appx474-475.

Per the Process Memo's own terms, the discretionary-denial decision that the former Acting Director reached in this case does not fall within the limited class of decisions that *Cuozzo* said is immune from judicial review. With section 314(d) inapplicable, the strong presumption in favor of judicial review controls, and review by this Court of the former Acting Director's decision is proper. *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015).

This is true even if the USPTO were to argue that the former Acting Director's decision not to institute IPR is akin to an agency's decision not to commence an enforcement action which is often "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). By making clear that—nine months after its issuance—*any patent* is subject to IPR (*infra* p. 9), Congress has circumscribed the USPTO's ability to condition IPR based on a patent's age, thereby making the former Acting Director's decision subject to judicial review. *Heckler v. Chaney*, 470 U.S. 821, 833 (1975) ("Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's

power to discriminate among issues or cases it will pursue."). Likewise, the USPTO's new "settled expectations" policy—which effectively immunizes tens of thousands of patents from IPR—is "a general policy that is so extreme as to amount to an abdication of [the agency's] statutory responsibilities" further warranting judicial review. *Id.* at 833 n.4 (quotations omitted).

Neither *Mylan* nor this Court's more recent mandamus decisions compel a different conclusion. Because the USPTO decision in *Mylan* did not involve the agency's newly-crafted bifurcated procedure, *Mylan* is not controlling. And while this Court recently denied mandamus relief sought from USPTO decisions made under the bifurcated procedure, no party in those cases argued that a decision made under the bifurcated procedure fell beyond the scope of section 314(d). *In re SAP Am., Inc.*, No. 2025-132, 2025 WL 3096788 (Fed. Cir. Nov. 6, 2025); *In re Motorola Sols., Inc.*, No. 2025-134, 2025 WL 3096514 (Fed. Cir. Nov. 6, 2025); *In re Google LLC*, No. 2025-144, 2025 WL 3096849 (Fed. Cir. Nov. 6, 2025).

Put simply, the USPTO's decision to adopt a new, extra-statutory process by which the Director will first determine whether the Board **will even consider** a petition's merits or its compliance with closely-related statutes has resulted in a framework by which the agency performs an action that is subject to judicial review.[8]

---

[8] Although the USPTO no longer uses this bifurcated process (*infra* p. 17, n. 6), the process was used in more than 580 cases and the Director intends to consider the

That the USPTO invented this new process out of whole cloth and with no direction from Congress underscores that the former Acting Director's discretionary-denial decision in this case (and hundreds of other cases) is not one Congress envisioned shielding from judicial review. This Court can—and should—review the former Acting Director's decision.

**B.** **The former Acting Director's decision in this case is the type of agency "shenanigan" that the Supreme Court has said is subject to judicial review, and *Mylan* is not to the contrary.**

Even if the Court considers the former Acting Director's discretionary-denial decision in this case to be one to which section 314(d) applies, mandamus relief is nonetheless proper. *Mylan*'s conclusion that "there is no reviewability of the Director's exercise of his discretion to deny institution except for colorable constitutional claims" refers to the non-reviewability of decisions where the Director has ***unfettered*** discretion—which existed in the cases *Mylan* cited. 989 F.3d at 1382 (discussing *Webster v. Doe*, 486 U.S. 592, 603-04 (1988) ("absolute discretion"); *Woodward v. United States*, 871 F.2d 1068, 1072 (Fed. Cir. 1989) ("generally unfettered" discretion)).

---

same "discretionary considerations," including "settled expectations," in future cases. Appx493 ("The Office has issued more than 580 decisions under the Interim Processes, providing substantial guidance on how the Director will handle discretionary considerations.").

*Mylan* did not rule out review where the agency's discretion is fettered, *e.g.*, where the agency was obligated to apply its own precedential *NHK* decision that was binding when Google filed its petitions. Appx485 ("A precedential decision establishes binding authority…").

*Mylan* also cannot be read to preclude mandamus challenges to the type of agency "shenanigans" the USPTO has undertaken with its "settled expectations" rule. *Mylan* merely rejected the particular contentions advanced there under the mandamus standard. *Mylan*, 989 F.3d at 1382. And *Cuozzo* is clear that judicial relief is available to address agency "shenanigans" such as actions "outside" the agency's "statutory limits." 579 U.S. at 275.

Section 314(d) may bar review of "an ordinary dispute about the application of an institution-related statute." *Thryv*, 590 U.S. at 54 (quotation omitted). But Google's challenge is not an ordinary dispute regarding the IPR statute—Google's challenge is to the USPTO's authority to create a new institution criterion that is inconsistent with the statutory language and this Court's law simply because the current Director is unsatisfied with the AIA as written. Such a "blatant violation[]" of legal constraints" is the type of "shenanigans" that merits this Court's review. *IGT v. Zynga Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025).

**C.** *Mylan* **confirms that mandamus is the proper vehicle for addressing Google's constitutional claim.**

Finally, *Mylan* identified mandamus as the proper vehicle for challenging a decision to deny institution where that decision implicates "colorable constitutional claims." *Id.* at 1382. *Mylan* thus does not bar this Court from considering whether the former Acting Director's decision violated separation of powers. *Infra* pp. 34-35.

**II. Google's right to relief is clear and indisputable.**

"[J]udicial review is available in extraordinary circumstances by petition for mandamus" in cases of "decisions denying institution." *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022) (citation omitted). Such extraordinary circumstances are present in this appeal as the USPTO's "settled expectations" rule is unlawful on both statutory and Constitutional grounds.

**A. The "settled expectations" rule is not in accordance with the law.**

The former Acting Director's finding that VirtaMove had "settled expectations" that its patent would not be subject to IPR because the patent has "been in force for more than 14 years" (Appx2) is irreconcilable with *Celgene*. Because the new "settled expectations" rule is not in accordance with the law as set forth by this Court, the former Acting Director's discretionary-denial decision must be set aside. 5 U.S.C. § 706(2)(A).

In *Celgene*, this Court—at the USPTO's behest—rejected Celgene's contention that it had an expectation that its pre-AIA patents would not be subject to IPR, a proceeding that did not exist at the time Celgene's patents issued. *Supra* pp. 10-11. As this Court explained, "the expectation that patent owners have had for nearly four decades" is "that patents are open to PTO reconsideration and possible cancelation." *Celgene,* 931 F.3d at 1361-62. Celgene knew its patents were subject to potential reconsideration by the USPTO during their term, and thus had no reasonable expectations to the contrary.

The similarity between Celgene and VirtaMove is stark—both owned patents that issued at least 14 years prior to being challenged in IPR. Just as Celgene lacked an expectation that its patent would not be subject to IPR as a matter of law, so too did VirtaMove. The former Acting Director's contrary finding is not in accordance with *Celgene*.

Notably, it was the USPTO that successfully persuaded this Court to find that Celgene lacked an expectation of IPR immunity. Brief for Intervenor USPTO Director Iancu at 42-43, *Celgene*, Case No. 2018-1167, Dkt. No. 41 (Fed. Cir. Aug. 30, 2018). And the USPTO continued to take that position throughout the *Celgene* case.

For example, in responding to Celgene's petition for en banc rehearing, the USPTO stated in no uncertain terms that: "There is also ***no reasonable expectation***

***that a patent will be shielded from scrutiny***, or that invalid patents will be sheltered from procedural changes that bring their defects to light." Intervenor's Response to Petition for Rehearing En Banc at 14, *Celgene*, Case No. 2018-1167, Dkt. No. 92 (Fed. Cir. Nov. 19, 2019).[9] The USPTO took a similar position in opposing Celgene's petition for a writ of certiorari from the Supreme Court. *Celgene Corp. v. Peter*, No. 19-1074, 2020 WL 2197883, *15 (S. Ct. May 1, 2020).

The USPTO thus ***repeatedly*** took the position that patentees have no reasonable expectation that their patents could be free from post-issuance reconsideration, including in the form of IPRs. Indeed, prior to its new "settled expectations" rule, the USPTO's position had been that the ***only*** expectation that patentees have had for forty years is that their patents ***are subject*** to post-issuance reconsideration and cancellation. *See also NHK*, 2018 WL 4373643 at *7. The USPTO's "settled expectations" rule is not in accordance with the law.

**B.    The "settled expectations" rule exceeds the USPTO's authority, and violates separation-of-powers principles.**

Whatever discretion the USPTO has in determining whether to institute IPR, the agency cannot exercise that discretion in a manner that exceeds its statutory authority. 5 U.S.C. § 706(2)(C). By treating the age of VirtaMove's patent as dispositive, the USPTO created a de facto deadline requiring that IPRs be filed

---

[9] Emphasis added unless otherwise noted.

within some ill-defined period of time early in a patent's term. This agency-crafted deadline is inconsistent with the AIA, and the USPTO exceeded its statutory authority by relying exclusively on that deadline to deny Google's petitions.

### 1. The AIA does not authorize the USPTO to impose institution criteria that lack any basis in the statute.

The USPTO argues that the Director's discretion to institute IPR is limitless and the Director can create any institution criteria he deems appropriate. Response of Respondent USPTO at 8, *In re Motorola Sols.*, No. 25-134, Dkt. No. 28 (Fed. Cir. Aug. 4, 2025) (institution "criteria" are "entirely within the Director's discretion"). The AIA provides the Director with no such power.

Congress gave the Director discretion to assess a petition's merits and its compliance with closely related statutes. Congress also gave the Director specific criteria by which to assess compliance with those statutory requirements. The petition's merits, for example, must demonstrate a "reasonable likelihood that the petitioner would prevail." 35 U.S.C. § 314(a). Likewise, the petition must satisfy procedural requirements that Congress explicitly identified. *E.g.*, 35 U.S.C. §§ 311(c), 312(a), 315(a)-(b). And while the Director can prescribe regulations, those regulations can only implement details for complying with the statutory criteria Congress provided. 35 U.S.C. § 316(a)(2).[10]

---

[10] The USPTO did not issue the "settled expectations" rule via regulation.

Missing from the AIA is any suggestion that the Director has more discretion than that which Congress explicitly gave him, and there is certainly no suggestion that Congress gave the Director free rein to impose additional institution criteria beyond those set forth in the statute. The Process Memo vaguely refers to "discretionary considerations," and identifies section 314(a) as the lone basis for imposing additional criteria on institution. Appx469. But all section 314(a) does is *limit* the Director's discretion by mandating that IPR cannot be instituted *unless* a specific Congressionally-identified criterion ("reasonable likelihood that the petitioner would prevail") is met. Section 314(a)—written in the negative—sets a merits-based threshold for institution; it does not provide the Director an affirmative grant of authority to deny IPR based on any criteria he chooses. *Social Security Bd. v. Nierotko*, 327 U.S. 358, 369 (1946) ("Administrative determinations must have a basis in law and must be within the granted authority.").

That the Director is not mandated to institute IPR even if the merits-based threshold is met is immaterial. Congress established criteria by which an otherwise meritorious petition might be denied. For example, Congress provided that the Director "may…reject" a petition if the petition relies on "the same or substantially the same prior art or arguments [that] previously were presented to the [USPTO]."

35 U.S.C. § 325(d).[11]  Or a petition may be denied for failing to set forth its arguments "with particularity."  35 U.S.C. § 312(a)(3).  The Director has discretion in how he interprets compliance with these statutory criteria, but Congress nowhere gave him discretion to fashion new criteria that are grounded nowhere in the AIA.

"Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided."  *Nat'l Fed'n of Indep. Bus v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022).  Congress has not provided the Director with the authority to impose additional institution criteria beyond those that Congress set forth.

### 2. The USPTO lacks authority to impose an age-based limit after which patents are not subject to IPRs.

Even if the USPTO had authority to impose additional institution criteria, it lacked authority to impose a criterion—the challenged patent's age—that contravenes express Congressional judgments reflected in the AIA's statutory framework and legislative history.  As the Senate Judiciary Committee Report for an early version of the AIA put it succinctly: "No patent holder has a right to an invalid patent, however long that patent holder may have enjoyed that right inappropriately."  S. Rep. No. 110-259, at 21 (2008).

---

[11] Under the USPTO's view of the Director's limitless discretion, section 325(d) is entirely superfluous as the Director already has discretion to deny institution for any reason, including a petition's reliance on previously-considered prior art.

The AIA sets the IPR filing "deadline" as ***any time after*** the later of either "the date that is 9 months after the grant of a patent" or the date of termination of any instituted post-grant review of the patent. 35 U.S.C. § 311(c). Congress knew how to impose an age-based limit affecting when an IPR must be filed, and the ***only*** such deadline that Congress elected to impose is one that limits IPRs to patents that have been issued for at least nine months. Congress's decision to impose one age-based deadline means that other age-based deadlines—like the USPTO's "settled expectations" deadline—were not intended. *See Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc) (superseded by statute) (in listing two statutory exceptions, Congress did not intend to allow other exceptions).

Congress's choice was deliberate. With its new IPR procedure, Congress sought to replace *inter partes* reexamination. *Oil States*, 584 U.S. at 331. Under that prior procedure, such reexamination could only be instituted against patents that issued on applications filed after November 29, 1999—all other patents were immune from *inter partes* reexamination. Pub. L. No. 106-113, § 4608, 113 Stat. at 1501A-572. Congress thus knew how to immunize an entire class of patents from review, but Congress opted not to immunize "old" patents from being subject to IPR.

As further evidence of Congress's deliberate choice, Congress imposed an age-based limit on the new post-grant review ("PGR") procedure, providing that

PGR was only available in the first nine months of a patent's term. 35 U.S.C. § 321(c). Again, Congress imposed no such limit on IPR.

Apart from age-based limitations, Congress also knew how to impose a more general time-based limit on requesting IPR. Specifically, section 315(b) requires that petitions be filed within a year of service of a complaint alleging infringement. The new "settled expectations" rule operates as an additional time limit on seeking IPR, requiring petitions to be filed early in a patent's term regardless of whether there has been an allegation of infringement and even if the petitioner is completely unaware of the patent's existence. Appx496 (Testimony of John A. Squires) (explaining how it is often "impossible" to know if a patentee may assert a patent until it does so, and advocating for a "second window" wherein defendants can challenge patents at the USPTO after they have been sued). Congress knew how to impose time limits, and it plainly did not enact the limit the agency has now engrafted onto the statute.

Consistent with the statute's text and Congress's deliberate decisions in crafting that text, Justices Alito and Sotomayor have interpreted the AIA to permit "anyone [to] file a petition challenging the patentability of an issued patent claim *at almost any time*." *Cuozzo*, 579 U.S. at 287-88 (Alito, J., concurring in part) (citing 35 U.S.C. §§ 311(a), (c)). As has this Court. *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1346 (Fed. Cir. 2020) (citing 35 U.S.C. §§ 311(c),

315(b), and explaining that "[IPRs] can be requested *at any time* during a patent's enforceability period, with certain restrictions").  Even the USPTO recently agreed in briefing to the Supreme Court that the AIA "does not generally set an outer limit on the time to seek inter partes review."  Brief for the Federal Respondent in Opposition at 6, *Gesture Tech. Partners, LLC v. Apple Inc.*, Case No. 24-1280, (S. Ct. Sept. 26, 2025).[12]

As the Justices, this Court, and the USPTO itself have all recognized, section 311(c) provides the only age-based restriction on when a patent may be challenged via IPR, and that provision limits how *early* in its term a patent can be challenged, not how *late* it can be challenged.  The USPTO's imposition of a new age-based deadline for filing an IPR exceeds its statutory authority.  5 U.S.C. § 706(2)(C).

The USPTO's new rule also violates separation-of-powers principles.  As the Supreme Court has explained in an analogous context, where Congress has explicitly set forth a timeliness standard for a particular cause of action, separation-of-powers principles preclude the other branches of government from imposing additional timing constraints that would bar otherwise-timely causes of action.  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods. LLC*, 580 U.S. 328, 335 (2017) ("[A]pplying laches within a limitations period specified by Congress would give

---

[12] The Supreme Court recently denied the petition for certiorari.  *Gesture Tech. Partners, LLC v. Apple Inc.*, 2025 WL 3198577 (S. Ct. Nov. 17, 2025).

judges a legislation-overriding role that is beyond the Judiciary's power." (quotations omitted)).

Just as laches "cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by [35 U.S.C.] § 286," *id.* at 346, the USPTO's "settled expectations" rule cannot be interposed as a defense to an IPR that is timely filed under the statute. Even the USPTO's own regulations recognize that Congress has the final say on timeliness. 37 C.F.R. § 42.3(b) ("A petition…must be filed with the Board consistent with ***any time period required by statute***."). The "settled expectations" rule is therefore not only beyond the USPTO's statutory authority, the rule is also an unconstitutional violation of separation-of-powers principles. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018) ("Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer.").

### C. The "settled expectations" rule is arbitrary and capricious.

The USPTO's reliance on the age of VirtaMove's patent to deny institution must also be reconsidered because such reliance is arbitrary and capricious. 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here,

the USPTO took into consideration the age of VirtaMove's patent despite Congress intending that any patent that has been issued for at least nine months is subject to IPR *at any point in time*. *Supra* Section I.B.2; *cf.* 35 U.S.C. § 315(b).

## III. Google has no other adequate means to obtain relief.

Having exhausted administrative remedies, Google has no other avenue than mandamus to obtain relief. Precisely because "there is no adequate remedy by way of direct appeal of decisions denying institution," this Court has "concluded that judicial review is available in extraordinary circumstances by petition for mandamus." *Palo Alto*, 44 F.4th at 1374 (cleaned up).

## IV. Mandamus relief is appropriate under the circumstances.

Given the significant effect of the USPTO's new "settled expectations" rule, mandamus relief is appropriate.

As a recent study confirms, *nearly half* of all patents challenged via IPR had issued at least six years prior to the IPR challenge. Appx464-468. If the "settled expectation" rule had been applied to immunize those patents from IPR, *thousands* of patent claims that the USPTO itself ultimately said should not have issued may have escaped review. Appx466 (reporting that 1,861 Board decisions cancelled at least one claim of a patent that was at least six years old).

The new rule does not "improve patent quality and limit unnecessary and counterproductive litigation costs," H.R. Rep. No. 112-98, at 40 (2011); it

immunizes an entire class of invalid patent claims from the very review that Congress designed to more efficiently re-evaluate the patentability of "questionable patents." *Id.* at 39. This cannot be what Congress expected. *FDA v. Brown & Williamson*, 529 U.S. 120, 160 (2000) ("We are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion.").

And while the new Director told Congress he had "no pre-disposition to alter the PTAB's authority or restrict IPR access" (Appx505), the imposition of a six-year cutoff for challenging patents via IPR plainly restricts access to IPR. Given the new rule's significant impact, there is a pressing need for this Court to resolve the fundamental legal questions presented herein.

## CONCLUSION

The Court should grant Google's petition, vacate the two discretionary-denial decisions, and direct the USPTO to reconsider institution without regard to the challenged patent's age.

Respectfully submitted,

Date: November 19, 2025

*/s/ Nathan R. Speed*
Nathan R. Speed
WOLF, GREENFIELD & SACKS, P.C.

*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

I, Nathan R. Speed, counsel for Petitioner, certify that the foregoing petition complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(b) and Fed. Cir. Rule 32(a). Specifically, this petition contains 7,788 words (excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b)) as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing petition complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). Specifically, this petition has been prepared using a proportionally spaced typeface using Microsoft Word 2010, in 14-point Times New Roman font.

Date: November 19, 2025

*/s/ Nathan R. Speed*
Nathan R. Speed
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA  02210
Telephone: (617) 646-8000
Fax: (617) 646-8646
nspeed@wolfgreenfield.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that a true and correct copy of the foregoing **PETITION FOR WRIT OF MANDAMUS** has been electronically filed with the Clerk of Court using the CM/ECF system.

I further certify that this document was sent by Federal Express on November 19, 2025 to lead counsel for VirtaMove, Inc. at the following address:

>Reza Mirzaie
>Russ, August & Kabat
>12424 Wilshire Blvd., 12th Floor
>Los Angeles, CA 90025

I further certify that courtesy copies of this document were sent to counsel above (Reza Mirzaie) and the following additional counsel of record for VirtaMove, Inc., by electronic mail on November 19, 2025:

>Marc A. Fenster    mfenster@raklaw.com
>Neil Rubin    nrubin@raklaw.com
>James A. Milkey    jmilkey@raklaw.com
>Qi (Peter) Tong    ptong@raklaw.com
>   rak_virtamove@raklaw.com

I further certify that this document was sent to efileSO@uspto.gov and also by U.S.P.S. Express Mail to the following address on November 19, 2025:

>Office of the Solicitor
>United States Patent and Trademark Office
>Mail Stop 8
>P.O. Box 1450
>Alexandria, Virginia 22313-1450

Date: November 19, 2025

/s/ Nathan R. Speed

Nathan R. Speed
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA  02210
Telephone: (617) 646-8000
Fax: (617) 646-8646
nspeed@wolfgreenfield.com

*Counsel for Petitioner*