# United States Court of Appeals for the Federal Circuit

---

*IN RE GOOGLE LLC*

*Petitioner.*

---

On Petition for Writ of Mandamus from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2025-00487 and IPR2025-00488

---

**RESPONSE OF VIRTAMOVE, CORP.**

---

James A. Milkey
Marc A. Fenster
Reza Mirzaie
Neil A. Rubin
Qi (Peter) Tong
RUSS AUGUST & KABAT
12424 Wilshire Blvd.
12th Floor
Los Angeles, CA 90025
Tel: (310) 826-7474

*Counsel for Respondent
VirtaMove, Corp.*

December 12, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 26-111

**Short Case Caption** In re: Google LLC

**Filing Party/Entity** VirtaMove, Corp.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/12/2025

Signature: /s/ James A. Milkey

Name: James A. Milkey

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| VirtaMove, Corp. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑     None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)     ☐  No     ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

Save for Filing

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...............................................i

TABLE OF AUTHORITIES...................................................v

INTRODUCTION..................................................................1

JURISDICTIONAL STATEMENT .......................................3

BACKGROUND....................................................................3

STATEMENT OF THE CASE ...............................................8

ARGUMENT .........................................................................8

    I.     Section 314(d) bars Google's petition. .................8

    II.    Google has no clear and indisputable right to relief. .........................16

         A.    Google's allegations of inconsistency with *Celgene* fail.......................17

         B.    The Director's exercise of discretion is consistent with the authority expressly granted by Congress...................22

         C.    Google fails to show the Director's decision was arbitrary and capricious. .........................25

    III.   Google has alternate means of relief, and fails to show mandamus is appropriate under the circumstances. ..........................26

    IV.   CONCLUSION.................................................27

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. Fintiv, Inc.*,
   No. IPR2020-00019, Paper 15, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) .....7

*Bartko v. Sec. & Exch. Comm'n*,
   845 F.3d 1217 (D.C. Cir. 2017) ........................................................................19

*Celgene Corp. v. Peter*,
   931 F.3d 1342 (Fed. Cir. 2019)...................................................................passim

*Cuozzo Speed Techs., LLC v. Lee*,
   579 U.S. 261 (2016)......................................................................................passim

*Dalton v. Specter*,
   511 U.S. 462 (1994)....................................................................................2, 15

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha*,
   No. IPR2016-01357, Paper 19, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017).......7

*Heckler v. Chaney*,
   470 U.S. 821 (1985)............................................................................................4

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
   467 U.S. 51 (1984)............................................................................................19

*In re Cambridge Indus. USA Inc.*,
   No. 2026-101, 2025 WL 3526129 (Fed. Cir. Dec. 9, 2025) ..........................15, 24

*In re Google LLC*,
   No. 2025-144, 2025 WL 3096849 (Fed. Cir. Nov. 6, 2025) ...............................24

*In re HighLevel, Inc.*,
   No. 2025-148, 2025 WL 3527144 (Fed. Cir. Dec. 9, 2025) ...............................24

*In re Motorola Sols., Inc.*,
   159 F.4th 30 (Fed. Cir. Nov. 6, 2025)................................................................23

*In re Palo Alto Networks, Inc.*,
   44 F.4th 1369 (Fed. Cir. 2022) ...........................................................................6

*In re Sandisk Techs., Inc.*,
   2025 WL 3526507 (Fed. Cir. Dec. 9, 2025) .......................................................24

*In re SAP America, Inc.*,
   No. 2025-132, 2025 WL 3096788 (Fed. Cir. Nov. 6, 2025) ...............................24

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*,
 989 F.3d 1375 (Fed. Cir. 2021)...................................................................passim

*New Hampshire v. Maine*,
 532 U.S. 742 (2001)....................................................................................21

*NHK Spring Co. Ltd. v. Intri-Plex Techs., Inc.*,
 IPR2018-00752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018).........................13

*Qualcomm Inc. v. Apple Inc.*,
 134 F.4th 1355 (Fed. Cir. 2025) ....................................................................11

*Thryv, Inc v. Click-To-Call Techs., LP*,
 590 U.S. 45 (2020)...................................................................................passim

*Valve Corp. v. Elec. Scripting Prods., Inc.*,
 No. IPR2019-00062, Paper 11, 2019 WL 1490575 (P.T.A.B. April 2, 2019) ......7

**Statutes**

28 U.S.C. § 1651(a).......................................................................................3

35 U.S.C. § 314(a)..................................................................................passim

35 U.S.C. § 314(d)..................................................................................passim

35 U.S.C. § 315(b)..............................................................................3, 10, 12

35 U.S.C. § 315(d)......................................................................................4, 5

35 U.S.C. § 6(a)...........................................................................................13

5 U.S.C. § 701 .......................................................................................23, 25

5 U.S.C. § 701(a)(2).....................................................................................23

5 U.S.C. § 706(2)(A).....................................................................................25

**INTRODUCTION**

Congress's intent in adopting the Leahy-Smith America Invents Act, Pub. L. No. 112-29 (2011) ("AIA") included the creation of the Patent Trial and Appeal Board ("PTAB") as a streamlined and efficient forum for conducting post-grant patent validity reviews to improve patent quality and reduce unnecessary and counterproductive litigation costs. Through the AIA, Congress invested the Director with discretion as to whether to institute Inter Partes Review. *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021) ("The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution."); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) (citing 35 U.S.C. § 314(a) and stating: "no mandate to institute review").

When the PTAB denied institution of IPR2025-00587 and IPR2025-00488 filed by Petitioner Google LLC ("Google"), that should have been the end of the matter. Section 314(d) of the AIA precludes all appeal from the decision whether to institute an IPR. *Cuozzo*, 579 U.S. at 274 (holding that § 314(d) "preclud[es] review of the Patent Office's institution decisions"). And mandamus is possible only to the extent that the petition raises "colorable constitutional claims." *Mylan*, 989 F.3d at 1382.

Google seeks to evade § 314(d) by alleging that the provision (which explicitly precludes appeal from the Board's determination whether to institute)

applies only to issues closely related to a ***merits*** determination (Pet. 5), an argument the Supreme Court has already considered and expressly rejected. *See Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 57 (2020) ("The text of § 314(d).... sweeps more broadly than the determination about whether 'there is a reasonable likelihood that the petitioner would prevail.' § 314(a). Rather, it encompasses the *entire determination* 'whether to institute an inter partes review.' § 314(d).").

Accordingly, the only type of challenge that could even *arguably* give rise to mandamus relief is an alleged constitutional violation. *Mylan*, 989 F.3d at 1382. But here, Google's only alleged constitutional challenge is merely an alleged statutory violation, which Google creatively repackages as a separation of powers violation. *See* Pet. 6 ("*Did the USPTO exceed its statutory authority—violating… the Constitution's separation of powers—by* imposing an age-based limit… contrary to the statute?"). Google's creative framing, however, is not *so* creative as to be new; instead, it too is an argument that the Supreme Court has already considered and expressly rejected. *Dalton v. Specter*, 511 U.S. 462, 473 (1994) ("The distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is too well established to permit this sort of evisceration.").

In any event, even if considered, Google's challenges to the denial of institution fail, because they are inconsistent with the Supreme Court's recognition

that "the agency's decision to deny a petition is a matter committed to the Patent Office's discretion." *Cuozzo*, 579 U.S. at 273.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under the All Writs Act "to consider [a] request for mandamus" relief. *Mylan*, 989 F.3d at 1381; *see* 28 U.S.C. § 1651(a).

## BACKGROUND

In creating the *inter partes* review process, Congress **prohibits** *inter partes* reviews from being instituted under certain circumstances. For example, an IPR "**may not** be instituted of the petition… is filed more than 1 year after the date on which the petitioner… is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b).[1] Congress specified additional timing requirements in § 311(c) that a petition must meet to be valid, such that institution would be proper. And the "threshold" requirement under 35 U.S.C. § 314(a) is whether "the Director determines that the… petition… shows that there is a reasonable likelihood that the petitioner would prevail." *Only* if that requirement is satisfied does the Director have authority to institute an IPR. *See* 35 U.S.C. § 314(a) ("The Director *may not* authorize an inter partes review to be instituted unless….").

Notably, these provisions all place **limitations** on the agency's ability to institute an IPR. When the agency receives an IPR petition meeting all of the

---

[1] All emphases added unless otherwise specified.

statutory requirements, then and only then is the Director ***permitted*** to institute an IPR. But the Director is *never **compelled*** to do so. *Mylan*, 989 F.3d at 1382 ("The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution."). This is in accord with the principle that "agencies generally are free… to choose not to initiate enforcement proceedings" such as IPR proceedings. *Mylan*, 989 F.3d at 1381 (citing *Heckler v. Chaney*, 470 U.S. 821 at 830–32 (1985)).

Accordingly, the Supreme Court has held that "the agency's decision to deny a petition is a matter committed to the Patent Office's discretion," relying on § 314(a)'s lack of any "mandate" to institute review. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016).

Congress did not stop at simply leaving denial of institution to the Director's discretion by deciding to omit any institution mandate from the AIA. *See Mylan*, 989 F.3d at 1382. Congress ***additionally*** restricted judicial oversight over denials of institution, by including an explicit "No Appeal" provision regarding determinations "whether to institute an inter partes review." 35 U.S.C. § 315(d) ("No Appeal. The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.").

The prohibition on appeal for institution decisions has nothing to do with whether "those institution decisions [] are related [] to a petition's merits []or to

4

statutes closely related to that merits-based decision," as Google would have it. *See* Pet. 8. Instead, the statutory text is absolute regarding ***any*** "determination by the Director whether to institute an inter partes review." 35 U.S.C. § 315(d). This is clear, not only from the statute itself, but also from binding Supreme Court precedent: § 314(d)'s bar on appeals applies to "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review," ***regardless*** of whether those questions are closely tied to "merits" of the petition. *Cuozzo*, 579 U.S. at 275; *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 57 (2020) ("The text of § 314(d).... sweeps more broadly than the determination about whether 'there is a reasonable likelihood that the petitioner would prevail.' § 314(a). Rather, it encompasses the *entire determination* 'whether to institute an inter partes review.' § 314(d).").

Accordingly, even though non-institution decisions are the type of agency non-enforcement decisions that are typically committed to agency discretion even absent clarification, Congress made this understanding explicit through ***two*** separate provisions of the AIA. First, Congress used permissive language in § 314(a) that specifies only when the Director is ***permitted*** to institute IPRs, and provides no specification regarding any ***requirement*** to institute. § 314(a) (providing only conditions where the "Director ***may not*** authorize an inter partes review to be instituted"). Second, Congress shielded *all* appeals of institution decisions

(regardless of whether or not they relate to merits as Google incorrectly contends) from appellate review. 35 U.S.C. § 314(d) ("The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.").

It is difficult to imagine how Congress could have been any clearer that non-institution decisions in particular are committed entirely to the agency's discretion. And Google cites no authority to the contrary; *no* case cited by Google allowed appeal or mandamus directly from an agency's institution decision or decision denying institution.[2]

The discretionary denial power assigned to the Director by Congress was no accident—Congress explicitly contemplated that the Director would decide to deny petitions for reasons unrelated to their merits. As Senator Kyl, a co-sponsor of the bill, explained:

> It is expected that the Office will include in the threshold regulations a *safety valve* that allows the Office to decline to institute further

---

[2] *In re Palo Alto Networks, Inc.*, 44 F.4th 1369 (Fed. Cir. 2022) is arguably the closest in this regard, as that case did not involve an appeal from the agency's final written decision. However, even that case did not involve the agency's decision not to institute, but rather the agency's refusal "to accept and consider [petitioner's] Requests for Director Rehearing of decisions denying institution." 44 F.4th at 1371. That case thus did not challenge the institution decision at all, but rather the agency's "current policy of refusing to accept [] requests" for rehearing. *Id.* Furthermore, that case presented a colorable constitutional question under "the Appointments Clause of the U.S. Constitution" (*id.*) rather than ordinary statutory challenges.

proceedings if a high volume of pending proceedings threatens the Office's ability to timely complete all proceedings. The present bill's inclusion of this regulations consideration in [section 316(b)] reflects a legislative judgment that ***it is better that the Office turn away some petitions that otherwise satisfy the threshold for instituting an inter partes or post-grant review than it is to allow the Office to develop a backlog*** of instituted reviews that precludes the Office from timely completing all proceedings.

157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

In accordance with this broad discretion entrusted to the agency, Directors have historically relied on various non-statutory factors in exercising their discretion to deny institution where the statutory requirements for institution might be otherwise met. *See, e.g., General Plastic Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016-01357, Paper 19, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (providing several discretionary denial factors regarding multiple parallel petitions); *Valve Corp. v. Elec. Scripting Prods., Inc.*, No. IPR2019-00062, Paper 11, 2019 WL 1490575 (P.T.A.B. April 2, 2019) (precedential) (applying *General Plastic* factors to different petitioners); *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, Paper 15, 2020 WL 2126495 at *2–*3 (P.T.A.B. Mar. 20, 2020) (precedential) (instructing the Board to take "a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review").

**STATEMENT OF THE CASE**

Petitioner Google, Inc. ("Google") filed IPR2025-00487 and IPR2025-00488 against U.S. Patent No. 7,519,814 owned by Respondent VirtaMove Corp. ("VirtaMove") in response to VirtaMove's claims of patent infringement brought in district court litigation. When the Board denied institution of Petitioners' IPRs, it applied a "holistic assessment of all of the evidence and arguments presented," and denied Google's IPRs "under 35 U.S.C. § 314(a)." Appx2. The Board noted two factors in particular that weighed against institution. First, "the challenged patents have been in force more than 14 years." *Id.* Additionally, the Board noted that "Petitioner does not provide any persuasive reasoning why an *inter partes* review is an appropriate use of Board resources." *Id.* The Board further made clear that these factors were part of the "holistic assessment" discussed above. *Id.*

Google then requested Director Review of the institution decisions (Appx5–44), which were denied (Appx45–47). Google's petition for a writ of mandamus followed.

**ARGUMENT**

**I. Section 314(d) bars Google's petition.**

35 U.S.C. § 314(d) bars appeals from the USPTO's decisions to institute or not institute an IPR petition. *See Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 53 (2020). That the Director acted *ultra vires* and other statutory arguments

"cannot be a basis for granting [a] petition for mandamus." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382-83 (Fed. Cir. 2021). A narrow exception to this rule exists only where the mandamus petitioner raises "colorable constitutional claims." *Id.* at 1382. Claims that an official "exceeded his statutory authority are not 'constitutional' claims." *Id.* at 473. Under *Mylan*, Section 314(d) forecloses each of Petitioners' arguments.

Indeed, the Supreme Court has applied § 314(d) even ***more*** broadly than appeals from decisions to institute or not institute an IPR. For instance, in *Cuozzo*, the appellant appealed after a final written decision canceling certain challenged claims, and did not appeal the institution decision itself. *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 269–70 (2016) (describing procedural history). Although the appeal was ***from*** the final written decision, the Court nevertheless held that it could not review whether "the Patent Office unlawfully initiated" the IPR in the first place, because such review would violate § 314(d). *Id.* at 271–72. Even the *dissent* in *Cuozzo* understood that § 314(d), *at very least*, bars interlocutory appeals of the type that Google seeks here. *Id.* at 272–73 ("The dissent… would limit the scope of the 'No Appeal' provision to *interlocutory* appeals, leaving a court free to review the initial decision to institute review in the context of the agency's final decision."); *id.* at 290–291 (Alito, J., concurring in part and dissenting in part) (explaining that the "No Appeal" provision bars "an appeal from the institution decision itself").

Likewise, in *Thryv*, the appeal at issue was after "the Board issued a final written decision." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 50 (2020) (describing procedural history). The party seeking review of the Board's decision, much like Google here, asked the Court to find the agency's institution decision legally flawed on an allegedly improper consideration of timing issues rather than any merits-based determination. *See id.* ("Click-to-Call appealed, challenging only the Board's determination that § 315(b) did not preclude inter partes review."). Even though the appeal was from the final written decision rather than the institution decision itself, the Court nevertheless held judicial review inappropriate because the appeal was "closely related to [the agency's] decision whether to institute inter partes review." *Id.* at 47.

In other words, binding precedent limits § 314(d)'s application, ***not only*** to appeals directly from institution decisions (like the Petition at issue here), ***but also*** to ***any*** appeal that is "closely related to [the] decision whether to institute inter partes review." *Id.*

Google nevertheless argues that § 314(d) prohibits appeals directly from an institution decision "in only limited circumstances." Pet. 7. Google's argument flips the relevant precedent on its head. Appeals from ***final written decisions*** are barred "in limited circumstances" pursuant to § 314(d)—i.e., when a "challenge to a decision to institute an IPR 'consist[s] of questions that are

closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review.'" *Qualcomm Inc. v. Apple Inc.*, 134 F.4th 1355, 1362 (Fed. Cir. 2025) (cleaned up) (deciding the appropriateness of an appeal from a final written decision). But appeals from institution decisions are ***always*** barred, because § 314(d) cannot plausibly be read otherwise, and because appeals of such decisions are ***necessarily*** seeking "review of the Patent Office's institution decisions." *Cuozzo*, 579 U.S. at 274 ("The text of the 'No Appeal' provision, along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review, all point in favor of precluding review of the Patent Office's institution decisions.").

In addition to incorrectly alleging that decisions whether to institute are themselves are appealable (despite citing ***no*** cases actually allowing an appeal from an institution decision), Google mischaracterizes the "limited circumstances" in which even appeal from final written decisions may be barred under § 314(d). Specifically, Google contends that § 314(d) "bars judicial review of the Director's merits-based determination" as well as "questions that are closely tied to" that merits-based determination. Pet. 21 (citing *Cuozzo*, 579 U.S. at 275). But the Supreme Court has ***explicitly rejected*** Google's argument (even in the context of appeals from final written decisions), making clear that

§ 314(d) is in no way limited to the merits-based determination of whether "there is a reasonable likelihood that the petitioner would prevail," but instead "encompasses *the entire determination*" whether to institute review. *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 57 (2020) ("The text of § 314(d).... sweeps more broadly than the determination about whether 'there is a reasonable likelihood that the petitioner would prevail.' § 314(a). Rather, it encompasses the entire determination 'whether to institute an inter partes review.' § 314(d)."). Indeed, if § 314(d) prohibited appeal only of issues closely related to a merits determination, the outcome in *Thryv* would make no sense, because § 315(b)'s time bar is unrelated to the "threshold" merits determination.[3]

Google's arguments originate from these two mischaracterizations of law discussed above: first, that appeals of non-institution decisions are permitted under *any* circumstances that do not raise constitutional claims, and second, that the prohibition on such appeals is restricted only to "merits" determinations. With these mischaracterizations as a foundation, Google contends that the instant decision not to institute is appealable because "the Director's decision

---

[3] Google misstates even the result of *Thryv*, in alleging that *Thryv* "review[ed] 35 U.S.C. § 315(b)'s time bar." Pet. 8. In actuality, the *Thryv* Court refused to consider the issue "for lack of appellate jurisdiction" because "Click-to-Call's attempt to overturn the Board's § 315(b) ruling is still barred by § 314(d)," even though the appeal was nominally "from the final written decision" rather than the institution decision. *Thryv*, 590 U.S. at 60.

under the new bifurcated process is not premised on the petition's merits or statutes closely related to the merits-based determination." Pet. 21. But as noted above, this allegation is inconsistent with § 314(d) and binding authority in two ways: it incorrectly assumes institution decisions can be appealed, and further incorrectly assumes that § 314(d)'s scope applies only to determinations of the merits of the petition as opposed to the "entire determination" of whether to institute. *See Thryv*, 590 U.S. at 57. Accordingly, Google's argument should be rejected.

Google additionally argues that *Mylan* and § 314(d) do not preclude writ relief because *Mylan* "did not rule out review where discretion was fettered," in alleging that the agency's *NHK* decision binds the Director. Pet. 25 (citing *NHK Spring Co. Ltd. v. Intri-Plex Techs., Inc.*, IPR2018-00752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018)). In doing so, Google relies on the Patent Trial and Appeal Board's "Standard Operating Procedure (SOP)" (Appx483–91) as supposedly limiting the Director's discretion. *See* Pet. 25 (quoting Appx485). But what Google ignores is that binding policy directives (such as designation of a decision as precedential) are "binding on any and all USPTO employees" (Appx484), with no suggestion that they are binding on the *Director* who is not an employee of the Board but rather a statutory member of the Board. *See* Appx483–84 (citing 35 U.S.C. § 6(a)). And the SOP further makes clear that designation of precedential decisions is a merely a

process for Directors to provide internal policy directives to Board employees, and "does not create any legally-enforceable rights." Appx483 ("This SOP sets forth internal processes and procedures for the administration of PTAB. ***It does not create any legally-enforceable rights.***").

Of course, a previous Director's designation of a decision that does not create ***any*** enforceable rights and also does not even purport to bind the Director cannot "fetter" the Director's discretion in the way Google contends. And in any event, Google's argument is directly foreclosed by the Supreme Court's decision in *Cuozzo*. 579 U.S. at 274 ("The text of the 'No Appeal' provision, along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review, all point in favor of precluding review of the Patent Office's institution decisions.").

Finally, to the extent 314(d) allows appeal of institution decisions for constitutional violations, no such violations are implicated. In *Mylan*, this Court has noted that there is a possible exception to 314(d)'s rule against appeal of institution decisions for "colorable constitutional claims." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). However, this Court has ***never*** found any such constitutional issue to be implicated by denial of institution, and the *Mylan* opinion itself expressed deep skepticism that any

constitutional challenge could be raised in the context of a mandamus petition at least because of the difficulty of establishing a "clear and indisputable right to relief." *See id.* ("While we need not explore the outer contours of possibility, it is difficult to imagine a mandamus petition that challenges a denial of institution and identifies a clear and indisputable right to relief.").

Google's sole alleged constitutional violation—a separation of powers issue—is not truly a constitutional claim, but is instead an allegation of a statutory violation. As *Mylan* previously noted, "statutory challenges" are different and distinct from a "constitutional challenge." *Mylan*, 989 F.3d 1375, 1381 (Fed. Cir. 2021) ("Mylan believes it is entitled to mandamus relief based on two statutory challenges and one constitutional challenge."). A statutory challenge (i.e., an allegation that the agency did not follow the statute) is thus distinct from a constitutional challenge.

Google's argument to the contrary has been recently rejected. *In re Cambridge Indus. USA Inc.*, No. 2026-101, 2025 WL 3526129, at *2 n.1 (Fed. Cir. Dec. 9, 2025) (rejecting a framing of "*ultra* vires arguments regarding the PTO's use of settled expectations… also as a constitutional separation of powers challenge") (citing *Dalton v. Specter*, 511 U.S. 462, 473–74 (1994)). And that conclusion follows directly from the Supreme Court's recognition of the "well established" "distinction between claims that an official exceeded his statutory authority, on the one hand,

and claims that he acted in violation of the Constitution, on the other." *Dalton*, 511 U.S. at 473. As the Supreme Court further explained, "if every claim alleging that [an official] exceeded his statutory authority were considered a constitutional claim," constitutional claims "would be broadened beyond recognition." *Id.* Google fails to explain why its allegation of a statutory violation should be elevated to a constitutional challenge, contrary to common sense and binding Supreme Court precedent.[4]

In sum, Google's petition is barred by not only the straightforward text of § 314(d), but also all relevant precedent of this Court and the Supreme Court.

## II. Google has no clear and indisputable right to relief.

Google, throughout its entire argument section alleging a "clear and indisputable" right to relief, fails to articulate ***any*** provision of the AIA that has even arguably been violated. Instead, Google (1) alleges an inconsistency with this Court's decision (and the agency's position) in *Celgene* (Pet. 26–28); (2) alleges that

---

[4] Indeed, far from Google asking the Court to *remedy* any separation-of-powers violation, Google asks this Court to *create* a separation-of-powers violation by "instruct[ing] the agency that it cannot consider the patent's age." Pet. 2. Congress entrusted discretion to deny IPR institutions (including which factors to consider) to the *executive*, not the *judiciary*. Google presents no reason why it would nevertheless be appropriate for the judiciary to override the Director's discretion with the *judiciary's* view of relevant factors, particularly where Congress in § 314(d) explicitly barred the judiciary from even hearing appeals from decisions denying institution.

the agency's application of discretion "exceeds the USPTO's authority" (without specifying any statutory provision that limits the agency's authority in the alleged manner) (Pet. 28–35); and (3) alleges a violation of the APA (Pet. 35–36). Each of Google's allegations are addressed in turn.

### A. Google's allegations of inconsistency with *Celgene* fail.

Google argues that it was improper for the Director to consider the age of the challenged patent at all, relying on *Celgene*. *See* Pet. 26–28. Google's briefing on this point appears to present two different arguments. First, Google implies that the instant exercise of discretionary denial actually conflicts with the Federal Circuit's *Celgene* decision. Pet. 26 (alleging the Director's action "is irreconcilable with *Celgene*").

But the issue in Celgene was dramatically different from those in the discretionary denial decision in this IPR. The issue in Celgene was a constitutional one, namely whether it was a Fifth Amendment taking—requiring monetary compensation from the government—for the PTAB to invalidate through an IPR proceeding claims in a patent that issued before the America Invents Act created the IPR process. *Celgene Corp. v. Peter*, 931 F.3d 1342, 1358 (Fed. Cir. 2019). What the Patent Office argued and what the Federal Circuit held was that IPR proceedings were similar enough to pre-AIA review mechanisms that it did not violate the

Constitution to invalidate pre-AIA patent claims through IPR proceedings without compensating the patent owner. *Celgene*, 931 F.3d at 1358–60.

Google seeks to expand this holding into something far broader than what the Patent Office argued or the Federal Circuit held. According to Google, the fact that the age of a pre-AIA patent does not make an IPR against that patent *unconstitutional* means that the Director *cannot consider the age of the patent at all* as a factor in exercising discretion in instituting IPRs. In other words, Google would turn the fact that IPRs of long ago-issued patents are not *unconstitutional* into such IPRs being *mandatory*. Such a result would both defy logic and subvert Congressional intent. If the Director is to exercise the "safety valve" that AIA cosponsor Senator Kyl spoke of in order to avoid a backlog of instituted reviews (157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)), then by definition the Director must base denial decisions on some factor that is not by itself enough to make instituting review of the IPR contrary to the Constitution or to statute. Favoring reviews of patents earlier in their lives—while still permitting later-stage reviews where there are other sufficiently strong reasons to permit review—is within the proper scope of discretion granted to the Director by Congress.

Google also implies (but does not expressly argue) that judicial estoppel may apply. *See* Pet. 27 (alleging that the "USPTO thus repeatedly took the position that patentees have no reasonable expectation that their patents could be free from post-

issuance reconsideration"). But as noted above, there is no inconsistency between the agency's position in *Celgene* (that IPRs applied to older patents are *constitutional*) and the agency's consideration of the age of challenged patents here.
ed State

And even if there **were** any inconsistency, Google fails to explain why that would be relevant, because it is well settled that "the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined."). Indeed, "[w]here courts have permitted equitable defenses to be raised against the government, they have required that the agency's misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level." *Bartko v. Sec. & Exch. Comm'n*, 845 F.3d 1217, 1227 (D.C. Cir. 2017).

There is nothing remotely rising to the level of "egregious" misconduct or "constitutional level" prejudice in the Director's discretionary denial decision. Google remains free to challenge the validity of patent at issue in district court or via other proceedings at the Patent Office. As the Federal Circuit recognized in *Celgene*, "no one has a vested right in any given mode of procedure." *Celgene*, 931 F.3d at 1361.

This case vividly illustrates the dangers of applying judicial estoppel against the federal government and its agencies. Google implicitly seeks to make a position purportedly taken in litigation by one Director, in one case, involving one patent, forever binding on her successors, in any case, involving any other party in the world. In *Celgene*, the Office did what agencies almost invariably do when the constitutionality of the statute they are acting under is challenged: argue that the law passed by Congress is constitutional. The decision to argue for the constitutionality of an agency's governing statute rarely requires a deep and searching analysis. But even for litigation positions that were taken unambiguously and with careful consideration, the dangers of the rule advanced by Google are obvious. There is little reason to assume that the first executive branch official to consider a particular issue will always make the best policy judgment. Her successors, with the benefit of further experience with the issue or facing changed circumstances may decide that a different policy is more consistent with her legal obligations or better advances the policy goals of the government. Agencies must be allowed to recognize their mistakes and change policy accordingly, and the mere fact that an issue arose in legal briefs should not leave the agency's policy judgment of the day set in stone for eternity.

Here the situation is even worse. The position that Google seeks to estop the agency to is not its position on the actual issue in *Celgene* (*i.e.*, whether canceling

pre-AIA patent claims in IPR proceedings was an unconstitutional taking). Rather, Google seeks to bind the agency to Google's own characterization of out-of-context statements about whether patentees have "expectations" about the validity of their patents. Google would have agencies carefully parse every brief to avoid any statement that might later be taken out of context to constrain—for all time—its exercise of the discretion it was granted by Congress. This is not reasonable to expect of an agency, upon pain of permanently locking all successor administrations into the consequences of failure to sufficiently constrain what its lawyers wrote in a brief.

Google also fails to establish the other requirements for judicial estoppel. For example, the Director is not a "party" to the IPRs at issue. *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) ("[A] ***party's*** later position must be 'clearly inconsistent' with its earlier position."). Furthermore, the Director's position here is not "clearly inconsistent" with the position taken in *Celgene* (*id.*), because as noted above that case dealt with whether a party's expectations rose to the level of a constitutional property right. Judicial estoppel additionally requires that the court "accept" the party's prior position. *Id.* The Federal Circuit in Celgene did not "accept" some generalized position about patent owner "expectations" concerning validity because no such issue was before it. Rather, the issue that the Federal Circuit decided was whether there had been an unconstitutional taking.

As noted above Google fails to identify any inconsistency with *Celgene* itself. And while Google *also* fails to identify any inconsistency with the USPTO's position in *Celgene* and the discretionary denial at issue here, Google further fails to explain why any alleged inconsistency in that regard could even arguably form the basis for Google's requested relief.

## B. The Director's exercise of discretion is consistent with the authority expressly granted by Congress.

Google additionally contends that the Director's application of discretion in this instance "exceeds the USPTO's authority." Pet. 28–35. However, this allegation is undermined by the fact that Google does not identify a single provision of the AIA (the basis for the USPTO's authority regarding IPRs) that prohibits the agency's action here.

Google first contends that the "AIA does not authorize the USPTO to impose institution criteria that lack any basis in the statute." Pet. 29. What Google ignores, however, is that the statute itself grants the Director exclusive power to decide whether to institute an IPR, even assuming all other statutory requirements are met. *Mylan*, 989 F.3d at 1382 ("The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution."). If the Director is never compelled to institute an IPR despite the statutory requirements otherwise being met, the Director necessarily has the authority to consider factors *other than*

those statutory requirements. Accordingly, the AIA *does* authorize the Director to consider criteria bearing on institution beyond the criteria explicitly recited in a provision of the AIA.

Google's suggestion that any discretionary factors are limited to those explicitly recited in the statute is at odds with Congress's failure to issue any such requirement in the AIA itself. That suggestion is also directly inconsistent with *Mylan*'s observation that the Director is "*never* compelled" to institute an IPR (989 F.3d at 1382), as well as the statutory scheme making institution decisions permissive and shielding such institution decisions from judicial review. *See Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 57 (2020) ("The text of § 314(d)…. encompasses the *entire determination* 'whether to institute an inter partes review.'"). The Supreme Court has explicitly affirmed this understanding. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion.") (citing 5 U.S.C. § 701(a)(2) and 35 U.S.C. § 314(a)).

This Court has recently affirmed these principles under similar circumstances. *See In re Motorola Sols., Inc.*, 159 F.4th 30 (Fed. Cir. Nov. 6, 2025) (precedential) (cleaned up) ("Given ***Congress committed institution decisions to the Director's discretion*** and protected that exercise of discretion from judicial review by making such determinations final and nonappealable, mandamus is ordinarily unavailable

for review of institution decisions."); *see also In re Cambridge Indus. USA Inc.*, No. 2026-101, 2025 WL 3526129, at *2 (Fed. Cir. Dec. 9, 2025); *In re HighLevel, Inc.*, No. 2025-148, 2025 WL 3527144, at *1 (Fed. Cir. Dec. 9, 2025); *In re Sandisk Techs., Inc.*, 2025 WL 3526507, at *1 (Fed. Cir. Dec. 9, 2025); *In re Google LLC*, No. 2025-144, 2025 WL 3096849, at *1 (Fed. Cir. Nov. 6, 2025); *In re SAP America, Inc.*, No. 2025-132, 2025 WL 3096788, at *2 (Fed. Cir. Nov. 6, 2025). And Google presents no rationale as to why the outcome of this petition should be any different.

Google separately argues that even if the USPTO may impose **some** discretionary denial factors not listed in the statute, it "lacks authority to impose an age-based limit after which patents are not subject to IPRs." Pet. 31. Google points to certain timing **requirements** set forth by statute, and implies that the statutory text of §311(c) (specifying a 9 month time period after which IPR petitions are **permitted**) should be interpreted by this Court far more expansively to prohibit the Director from even **considering** additional factors in the discretionary analysis.[5]

Google, while arguing that "Congress's choice was deliberate" (Pet. 32), ignores the fact that Congress *deliberately* granted the agency broad discretion to deny IPRs, and *deliberately* shielded the agency's exercise of discretion from

---

[5] Google's allegation that the Direcor has imposed "an age-based limit after which patents are not subject to IPRs" is false, as shown by Google's own evidence. *See* Appx465 ("The [allegedly] de factor presumption of settled expectations after six years has been overcome in a few cases," where there were actual "reasons why a patent owner may not have settled expectations.").

judicial review. Google's Petition simply ignores *explicit* guidance from Congress (e.g., regarding the non-reviewability of institution decisions) when it suits Google, while reaching to construct implicit guidance in the penumbra of § 311(c). No authority supports Google's approach here, and even if Google's arguments were even potentially correct, Google certainly cannot show a "clear and indisputable" right to relief justifying mandamus.

### C. Google fails to show the Director's decision was arbitrary and capricious.

Finally, Google alleges that "[t]he USPTO's reliance on the age of VirtaMove's patent to deny institution… is arbitrary and capricious" under 5 U.S.C. § 706(2)(A), part of the Administrative Procedure Act (APA).

As an initial matter, the APA makes clear that the "arbitrary [and] capricious" standard of 5 U.S.C. § 706(2)(A) is not even applicable to the present case. *See* 5 U.S.C. § 701 ("This chapter applies, according to the provisions thereof, **except** to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."). ***Both*** of the APA exceptions to judicial review apply here. *See* 35 U.S.C. § 314(d) ("No Appeal.—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."); *Cuozzo*, 579 U.S. at 273 (holding that "the agency's decision

to deny a petition is a matter committed to agency discretion by law" under "§ 701(a)(2)").

Google makes no attempt to explain how its allegation of an "arbitrary and capricious" violation is even arguably consistent with the APA given that *both* exceptions to the APA's applicability are present. But even if considered, Google APA-based challenge includes only three sparse sentences of analysis, which present no reasoning beyond an incorporation of Google's prior allegations of statutory violation. *See* Pet. 35–36. Google presents no rationale, for example, why the agency's decision to consider a patent's age is arbitrary and capricious in view of Congress's own recognition of the benefits of an "early-stage process for challenging patent validity," and "the importance of quiet title to patent owners." H.R. Rep. No. 112-98, at 48 (2011) ("America Invents Act").

## III. Google has alternate means of relief, and fails to show mandamus is appropriate under the circumstances.

Finally, a petitioner for mandamus must show that he has "no other adequate means to attain the relief he desires" and that "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380 (citation omitted). The Petition fails in this respect, because the relief Google seeks is ultimately invalidation of VirtaMove's patents. And there are alternative means by which Google may pursue that goal, including through district court or *ex parte* reexamination proceedings. Google's

Petition does not even *mention* these alternative means of relief, much less carry its burden of showing that these well-known alternatives are not adequate.

Google also fails to show that issuance of a writ is "appropriate under the circumstances." As explained above, Google's arguments largely serve to evade the effect of § 314(d), and those arguments are wrong in any event. Google's arguments in this regard regarding the appropriateness of relief are simply conclusory policy arguments (*see* Pet. 36–37), evaluation of which Congress entrusted to the executive rather than Google or the judiciary.

## IV. CONCLUSION

This Court should deny Google's petition for a writ of mandamus.

December 12, 2025                    Respectfully submitted,

                                    */s/ James A. Milkey*
                                    James A. Milkey
                                    Marc A. Fenster
                                    Reza Mirzaie
                                    Neil A. Rubin
                                    Qi (Peter) Tong
                                    *Counsel for Respondent*
                                    *VirtaMove, Corp.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The undersigned hereby certifies that the foregoing brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and the Federal Circuit Rules because the brief has been prepared using a proportionally-spaced typeface using Microsoft Word in 14-point or larger Times New Roman font or another proportionally-spaced typeface with serifs and includes 6,319 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 5(c), 21(d), 27(d)(2), 32(f), and 32(b).

December 12, 2025                    Respectfully submitted,

                                    */s/ James A. Milkey*
                                    James A. Milkey
                                    Marc A. Fenster
                                    Reza Mirzaie
                                    Neil A. Rubin
                                    Qi (Peter) Tong
                                    *Counsel for Respondent*
                                    *VirtaMove, Corp.*